IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| HENCO ENERGY-RICK HENDRIX ENERGY LLC and DR. RICHARD HENDRIX<br><br>v.<br><br>POWER RENTAL SOLUTIONS, LLC, f/k/a ERS Rental Solutions, LLC; DISTRIBUTED POWER SOLUTIONS, LLC; RICH FLYNN; SCOTT MILLIGAN; KEN JOHNSON; and ROBERT SAFI | Case No. 3:22-0603<br>Judge Campbell<br>Magistrate Judge Holmes |

**O R D E R**

In two nearly identical motions, both of which are titled, "Attorney Diogu Kalu Diogu's Emergency Motion for Continuance of the March 22nd, 2023 Hearing, Recusal, and Sealing of Document Number 33" (Docket Nos. 47, 48)[1], filed by Diogu Kalu Diogu II, lead counsel for Plaintiff, on behalf of himself,[2] Mr. Diogu makes several requests, including for the undersigned to recuse herself, at least from the instant matter concerning Mr. Diogu's conduct.[3] (Docket No. 48 at 2.) For the reasons that follow, Mr. Diogu's motions for the undersigned Magistrate Judge's recusal from this matter are DENIED.

---

[1] Unless otherwise specified, this Court will cite only to the motion filed at Docket No. 48 for ease of reference.

[2] Plaintiffs' local counsel did not sign the motions and represented to the Court, during an in-person proceeding on March 22, 2023, that he was not aware of the existence of the motions until after they were filed by Mr. Diogu.

[3] In the two motions, Mr. Diogu also asked this Court to (1) continue the March 22 show cause hearing; (2) refer the matter "back to the Presiding Judge and Chief Judge of this district"; and (3) seal the Court's November 28 show cause order. (Docket Nos. 47, 48.) By separate order, the Court rescheduled the March 22 show cause hearing and denied Mr. Diogu's request for this matter to be referred back to a District Judge. An order denying Mr. Diogu's request to seal was also entered separately.

Further, on March 23, 2023, Mr. Diogu filed a letter directed to the undersigned (Docket No. 51), in which he again requests recusal, among other things. A letter to the Court is not an appropriate means of requesting relief. Requests for relief must be in the form of a motion. While Mr. Diogu is representing himself in this collateral matter, an attorney proceeding *pro se* is not automatically subject to the leniency ordinarily afforded to *pro se* litigants because an attorney is presumed to have knowledge of the legal system and is less in need of protections from the court. *Johansen v. Presley*, 977 F.Supp.2d 871, 876-77 (W.D. Tenn. 2013) (internal citations omitted). *See also Hunter v. Hamilton County*, Case No. 1:15-cv-540, 2016 WL 11458137, at *5 (S.D. Ohio May 24, 2016) (same); *Harris v. Ally Financial, Inc.*, Civil No. 2:15-cv-02501-JPM-dkv, 2015 WL 7588263, at *2 (W.D. Tenn. Nov. 25, 2015) (same). The relief in Mr. Diogu's March 23 letter, including the undersigned's recusal, is therefore subject to denial as procedurally improper. Nevertheless, for the reasons discussed below, Mr. Diogu's additional request for the undersigned's recusal in his letter of March 23 is denied on the merits.

### I.     Background

Mr. Diogu's recusal request stems from a November 28, 2022 Order to Show Cause, in which the Court stated that it had become aware of information from which it appeared that Mr. Diogu "was the subject of disciplinary proceedings in Texas (the outcome of which is unknown) and has also previously been sanctioned and declared a vexatious litigant in prior litigation." (Docket No. 33 at 1.) This information came to the Court's attention during the pendency of this case following Mr. Diogu's admission to the bar of this Court.

On September 13, 2022, the Court entered an order (Docket No. 7) reminding Mr. Diogu of the requirement that he retain local counsel because, although he is recently admitted to the Court's bar, he is not admitted to practice in the state of Tennessee. *See* Local Rule 83.01(d)(1)

("Unless counsel appearing on behalf of a party in a civil case is both a member of the Tennessee bar and admitted to the bar of this Court, local co-counsel must be retained."). On September 28, which was the deadline for Mr. Diogu to retain local counsel, he instead filed a motion requesting a waiver of Local Rule 83.01(d)(1).[4] (Docket No. 8.) In consideration of that request, and in furtherance of its inherent authority to oversee the conduct of attorneys appearing before it, the Court directed the Clerk of Court to investigate and compile any publicly available information that might assist the Court in determining whether Mr. Diogu should be permitted to proceed without local counsel. From initial review of the publicly available information described below, the Court declined to waive the requirement for Mr. Diogu to retain local counsel.

The Court then took additional time to even more carefully review the available information and to determine the most appropriate course of action.[5] In his application, Mr. Diogu stated that he had not been reprimanded, censured, or disciplined by a federal or state court of

---

[4] Mr. Diogu's motion referred to the applicable rule as Local Rule 83.01(5). There is no Rule 83.01(5) in the Court's local rules. The Court gave Mr. Diogu the benefit of the doubt that he was referring to Local Rule 83.01(d)(5). But even Local Rule 83.01(d)(5) did not apply to Mr. Diogu's request for waiver of the local counsel requirement. Instead, Local Rule 83.01(d)(5) provides that, even though local counsel is not otherwise required, the assigned judge may, in her discretion, require association of local counsel for an attorney who resides outside the Middle District of Tennessee – the opposite of what Mr. Diogu was requesting.

[5] Mr. Diogu, by signing his application for admission to this Court, affirmatively represented that the statements made in the application for admission were true. He also affirmatively acknowledged his continuing obligation to immediately advise the Court of any matter that could make his application false or misleading, even after his admission to the Court. The specific language of the application is as follows:

> I hereby make application for admission to practice in the United States District Court for the Middle District of Tennessee, and state that I am now a member in good standing of the Bar of the State of Tennessee, other U.S. state or territory, or District of Columbia and further represent that the statements made hereinafter are true. I acknowledge an on-going obligation to immediately advise the Court of any matter that could make this application false or misleading, even after my admission to the Court.

3

record, other judicial or quasi-judicial tribunal, or a board of disciplinary authority or similar body. (*Id.*) However, public filings from Mr. Diogu's bankruptcy case in the United States Bankruptcy Court for the Southern District of Texas, *In re Diogu Kalu Diogu II*, Bankruptcy Case No. 21-33581 (TXSB), indicated otherwise and suggested that Mr. Diogu failed to disclose pertinent information to this Court when applying for admission. (*Id.*) These public filings consisted of court orders, judgments, and disciplinary petitions that were filed in or issued by various judicial bodies in the State of Texas (the "Texas proceedings"), some of which included imposition of monetary sanctions against Mr. Diogu and findings that he was a vexatious litigant. To allow Mr. Diogu an opportunity to explain why none of the information was disclosed in his application for admission, the Court issued the November 28 show cause order.

On December 19, 2022, Mr. Diogu filed a response to the November 28 show cause order. (Docket No. 39.) In this response, Mr. Diogu "apologize[d] for not disclos[ing] the items the court listed in the show cause order" and stated the failure to do so was "unintentional." (*Id.* at 1.) Mr. Diogu also provided information and arguments related to several of the items included in the November 28 show cause order and attached several exhibits. (*Id.*; Docket Nos. 39-1 to 39-10.)

After review of Mr. Diogu's response, the Court determined that Mr. Diogu should have an opportunity to explain the circumstances of the previously undisclosed matters and give any other reasons for his failure to disclose the information in his admission application. The Court therefore issued an order on February 8, 2023 (Docket No. 45) setting an in-person hearing on March 22, 2023, at 11:00 a.m. (CDT), for the Court to:

> consider whether Mr. Diogu should remain a member of the bar of this Court. Mr. Diogu must appear and be prepared to offer evidence, including his testimony under oath, of the circumstances and status of each of the undisclosed matters described in the November 28 Order, as well as any other disciplinary actions or sanctions by any other courts, administrative bodies, or other tribunals against Mr. Diogu that were not disclosed on his application for admission to the bar of this Court.

4

(*Id*. at 1-2.) *See* Local Rule 83.01(c)(1) ("[A]ny member of the bar of this Court may for good cause shown, and after an opportunity be heard has been given, be disbarred, suspended from practice for a definite time, reprimanded, or subject to such other discipline as the Court may deem proper.")

On March 21, 2023, at approximately 5:30 p.m. (CDT), Mr. Diogu filed his first emergency motion for a continuance and other relief, in which he asked that the March 22 hearing be moved. (Docket No. 47.) He also requested that the undersigned recuse herself from this matter. (*Id.*) The next morning, on March 22, 2023, at approximately 10:02 a.m. (CDT), less than one hour before the scheduled hearing, Mr. Diogu filed a second emergency motion to continue and for other relief, including the undersigned's recusal. (Docket No. 48.) The second motion appears to be identical to the first motion, except that the second motion includes a corrected certificate of service.[6] The second motion still recites that there are two conflicting criminal settings in state court but refers to three appended exhibits, the additional one of which is not a notice of a third criminal case setting but of a summary judgment hearing in a civil case in state court. (Docket No. 48-2.)[7]

---

[6] Presumably the second motion was filed to address the Clerk's notice to Mr. Diogu, docketed on March 22, 2023, that the certificate of service of Mr. Diogu's earlier filing (Docket No. 47) did not conform to the Court's local rules.

[7] Because of the important issues raised in the Court's November 28 show cause order, the Court determined that resetting the March 22 show cause hearing was appropriate. Out of courtesy, the Court provided Mr. Diogu with several alternate dates, but cautioned that if he did not confirm one of the dates, the Court would schedule the hearing without his input. The March 22 hearing was rescheduled for April 26, 2023, at 11:00 a.m. (CDT), which is the date and time confirmed by Mr. Diogu. After the Court entered an order resetting the hearing (Docket No. 50), Mr. Diogu sent the March 23 letter to the Court stating that he had "tentatively" selected April 26 as the hearing date, "subject to being provided with the names of [his] accusers." (Docket No. 51 at 1.)

5

Mr. Diogu's original filings on March 21 and 22 include a request for the undersigned Magistrate Judge to recuse herself from this matter because he "question[s] her impartiality." (Docket No. 48 at 2.)[8] His questioning is based on the November 28 show cause order, which Mr. Diogu alleges was "defamatory" and "should not have been published" because it included references to "raw, frivolous, and unproven" allegations regarding his conduct in unrelated legal proceedings in Texas. (*Id.* at 1–2.) Mr. Diogu does not cite to any case law or statutory authority to support his arguments.

Rather, Mr. Diogu asserts that the Court's reference to the Texas proceedings – all of which involved Mr. Diogu and are available as matters of public record – is *de facto* evidence of the undersigned's bias and partiality. (*Id.* at 2.) He contrasts the Court's consideration of the Texas proceedings with "opinions formed … on the basis of facts introduced or events occurring in the course of current proceedings, or of prior proceedings." (*Id.*) He states that opinions formed during proceedings "do not constitute a basis for a bias or a partiality motion." (*Id.*). Mr. Diogu implies

---

[8] The Court notes that Mr. Diogu, in his motion, alternatively refers to the undersigned as "Magistrate Judge" and "the magistrate." Since 1991, the proper title is "Magistrate Judge." If counsel wishes to shorten the title, normally it is shortened to "Judge" and not "Magistrate." As a former esteemed colleague, Magistrate Judge Joe B. Brown admonished, "[o]ne does not refer to a Bankruptcy Judge as 'Bankruptcy', nor if one were in the military would one refer to a Lt. Colonel as 'Lieutenant.'" *Meyer v Smith & Nephew, Inc.*, No. 3:11-0402, 2012 WL 4049970, at *1 n.2 (M.D. Tenn. Sept. 13, 2012). Mr. Diogu's motion also refers to the "Magistrate court," which is an incorrect reference. As noted by a sister court in the Southern District of Iowa,

> To avoid confusion with state court justices of the peace or other part time judicial officers with relatively little responsibility, Congress changed the title for Article I judicial officers from "Magistrate" to "Magistrate Judge". It is an important distinction not recognized in [Mr. Diogu's motion]. In fact, [Mr. Diogu] referred to "magistrate court". There simply is no such place. They should be referred to as "Magistrate Judge". They work in the United States District Court.

*United States v. Higby*, No. 4:15-CR-0142 JAJ, 2015 WL 13914071, at *1 (S.D. Iowa Dec. 2, 2015).

6

that the Court's consideration of the Texas proceedings did not "occur[] in the course of" this proceeding in the Middle District of Tennessee, and, therefore, that consideration "constitute[s] a basis for a bias or partiality motion." (*Id.*) Mr. Diogu states that this law comes from the "Supreme Court" but does not provide a citation or specify to which "Supreme Court" he is referring.[9] (*Id.*)

Mr. Diogu also states that the information contained in the November 28 show cause order was conveyed with an "accusatory tone" and "implied" "insinuations of wrongdoing." (*Id.*) He believes that the show cause order violated the rule of law and his due process rights because it included references to statements made in the Texas proceedings, which he calls "unproven, bullying, and unappealable." (*Id.*) Mr. Diogu also suggests that the undersigned failed to follow the rule of law: "As a black man, based on our tortured history with Southern Courts in particular, adherence to the rule of law no matter how slight matters, and that was not the case here." (*Id.*)

In his letter filed on March 23, 2023, Mr. Diogu states that the undersigned is by her "conduct and utterances … purposefully rude, bullying, and disrespectful" of him. (Docket No. 51 at 1.) Mr. Diogu further poses the question, "How many 'white lawyers' have been treated this disrespectfully by [the undersigned] under similar circumstances?" (*Id*. at 1-2.)[10] He also states:

---

[9] The only law to which Mr. Diogu cites is Texas Rule of Appellate Procedure 21.8(b). (Docket No. 48 at 2 n.1.) The Federal Rules of Civil Procedure generally govern this federal court proceeding. To the extent that other state law, or rules, might apply in this diversity action, Mr. Diogu, who is an experienced attorney, failed to provide any authority to support his reliance on Texas rules.

[10] Mr. Diogu poses an additional question of "[w]hom are you covering up?" (Docket No. 51 at 2, n.2). This apparently refers to Mr. Diogu's belief that the undersigned engaged in *ex parte* communications with some person or persons about the undisclosed information described above. As noted above, Mr. Diogu also states that he only "tentatively" agreed to April 26 as the date for the rescheduled March 22 hearing, and he makes the following statement: "… if I am not provided with the names of my accusers, I am not coming" (Docket No. 51 at 1), referring to his attendance at the rescheduled April 26 show cause hearing.

7

"Honestly, I think you should disqualify yourself." (*Id*. at 2.) By all these filings, Mr. Diogu urges that recusal of the undersigned is appropriate.

## II.     Legal Standards and Analysis

Under 28 U.S.C. § 455(a), a federal judge must generally recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b) lists five situations in which a judge must also disqualify herself. The sole situation applicable to this case is when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

The law on recusal in the Sixth Circuit is straightforward and well-established. A district court judge is required to recuse herself under § 455(a) "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting *Trotter v. International Longshoreman's & Warehousemen's Union*, 704 F.2d 1141, 1144 (9th Cir. 1983)). This standard is objective and is not based "on the subjective view of a party, no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (quoting *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988), *cert denied*, 488 U.S. 1018 (1989)).The Seventh Circuit has elaborated on the necessity and desirability of this objective recusal test:

> An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person .... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

8

*Hook v. McDade,* 89 F.3d 350, 354 (7th Cir. 1996) (quoting *In re Mason,* 916 F.2d 384, 386 (7th Cir. 1990)). Further, "a predisposition acquired by a judge during the course of the proceedings will only constitute impermissible bias when it is so extreme as to display clear inability to render fair judgment." *United States v. Howard*, 218 F.3d 556, 566 (6th Cir. 2000) (internal citations omitted) (cleaned up).

Regarding recusal for personal bias, the Sixth Circuit explained this requirement as follows:

> "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

*Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir. 1989) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1965)). Allegations "sufficient to justify recusal must be a personal bias, as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Easley v. University of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (quoting *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (cleaned up). The legal standard requires facts that would convince a reasonable person that a bias exists. *Story*, 716 F.2d at 1090 (quoting *United States v. Thompson*, 483 F.2d 527, 528 (3rd Cir. 1973)).

If a party seeks a judge's recusal because of personal bias or prejudice, that party must file an affidavit setting forth its allegations. 28 U.S.C. § 144.[11] An affidavit filed under § 144 must

---

[11] Section 144 provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal

9

Case 3:22-cv-00603 Document 55 Filed 03/30/23 Page 9 of 15 PageID #: 1266

"allege[] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party." *Gen. Aviation, Inc. v. Cessna Aircraft, Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990). Failure to file an affidavit will result in the denial of a motion for recusal. *See Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (citing *United States v. Sammons*, 918 F.2d 592, 598 (6th Cir. 1990) ("Sammons never filed the required affidavit, and was not, therefore, entitled to recusal under 28 U.S.C. § 144.")).

Mr. Diogu's contentions that the undersigned's impartiality might be reasonably questioned are without any evidentiary support. Mr. Diogu's allegations of bias exclusively relate to the undersigned's actions in judicial proceedings in this case. The genesis of this entire proceeding occurred in the context of this case when Mr. Diogu sought a waiver of the local counsel requirement. The undersigned learned of Mr. Diogu's prior history in other proceedings, which are matters of public record in his personal bankruptcy case and were described in the November 28 show cause order (Docket No. 33 at 1–2.), while fulfilling her judicial responsibilities in this case, including oversight of Mr. Diogu. The November 28 show cause order simply described those prior proceedings as matters about which Mr. Diogu was entitled to an

---

> bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

opportunity to explain since they were not included in his application for admission, but about which he had an ongoing obligation to advise the Court to the extent that they rendered his application for admission false or misleading. *See, e.g., In re Lawrence*, No. 21-1426, 2022 WL 17986132, at *4 (6th Cir. Dec. 29, 2022) (while "there is great interest in attorneys practicing their profession and litigants having the attorney of their choosing … this interest is countervailed by the public interest that requires the court to consider whether the applicant attorney possesses the professional and ethical competence expected of an officer of the court") (quoting *Application of Mosher*, 25 F.3d 397, 400 (6th Cir. 1994)) (cleaned up). The mere fact that the publicly available documents were located is not evidence of partiality. Nor does simply describing the prior proceedings in the November 28 show cause order constitute bias.

The Court has every right to verify that statements made to it by parties or attorneys are truthful.[12] *Id.* at *4 ("District courts have not only inherent authority but statutory power to govern membership of their bars."). Keen oversight of attorneys practicing in this Court, including by confirming the veracity of information provided when those attorneys apply for admission, is integral to the Court's inherent responsibility to "regulate the conduct of attorneys and parties

---

[12] Mr. Diogu incorrectly contends in his March 23 letter that if this information came to the Court's attention before his admission to practice before this Court, "this entire inquiry has become moot." (Docket No. 51 at 4.) As expressly acknowledged by Mr. Diogu in his application for admission to this Court, he has a continuing obligation to immediately advise the Court of any matter that could make his application false or misleading. Further, in addition to the Court's inherent oversight responsibility of attorneys appearing before it, the Court's local rules expressly provide that "any member of the bar of this Court may, for good cause shown, and after an opportunity to be heard has been given, be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper." Local Rule 83.01(c)(1). There is simply no support for Mr. Diogu's characterization of his admission to the bar as some safe harbor into which the Court's oversight responsibilities do not extend.

11

before it," *Jaynes v. Austin*, 20 Fed. Appx. 421, 427 (6th Cir. 2001) (citing *United States v. Payner*, 447 U.S.C. 727 (1980); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991))[13], and "to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). *See also In re Lawrence*, 2022 WL 17986132, at *3 ("Courts have long recognized an inherent authority to suspend or disbar lawyers … This inherent power derives from the lawyer's role as an officer of the court which granted admission.") (quoting *In re Snyder*, 472 U.S. 634, 643 (1985)). Further, the proceedings in this matter evidence that this Court has attempted to be as objective and equitable as possible with respect to Mr. Diogu's nondisclosure of the matters described in the November 28 show cause order. Once it came to the Court's attention that Mr. Diogu's representations to this Court may have been inaccurate, this Court did not rush to judgment, as Mr. Diogu implies. Rather, this Court issued the November 28

---

[13] As the Supreme Court has observed:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson* ). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also *Ex parte Robinson,* 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

show cause order to afford Mr. Diogu an opportunity to explain his apparent nondisclosure of information that, at a minimum, might have made his application misleading. (*Id.* at 1–3.)[14] Further, this Court set an in-person evidentiary hearing to allow Mr. Diogu to offer evidence, including his testimony under oath, of the circumstances and status of each of the undisclosed matters described in the November 28 show cause. (Docket No. 45.) The Court was ready to consider Mr. Diogu's evidence. However, Mr. Diogu filed a last-minute "emergency" motion after business hours to continue the hearing that was his opportunity to explain matters to this Court. Despite the many issues in his late-filed motion, the Court reset the March 22 show cause hearing so that Mr. Diogu can appear and present his side of the story about the issues raised in the November 28 show cause order.[15] No reasonable person with knowledge of all the facts could reasonably question the undersigned's impartiality simply from reliance on publicly available sources in oversight of an attorney's conduct before the Court, particularly when Mr. Diogu does not dispute that he failed to disclose the described orders and other proceedings[16] and he has been given ample opportunity to explain the reasons for his nondisclosure.[17]

---

[14] As the November 28 show cause order states, Mr. Diogu was given the chance to show why his admission to the bar of this Court "should not be revoked and other appropriate action taken for nondisclosure of the matters described above." (*Id.* at 3.)

[15] And now, Mr. Diogu blatantly states that he will appear only on his terms. (Docket No. 51 at 1.)

[16] *See* Docket No. 39 at 1 ("Comes now the Respondent, filed this as his response to the Show Cause, by saying that he deeply apologizes for not disclosing the items the court listed in the show cause order. My failure to do so was unintentional.").

[17] Under the simple circumstances here, an attorney applying for admission to the bar of this Court could completely fabricate his application and if a presiding judge became aware of the fabricated statements by some otherwise publicly available source, the judge would be required, under Mr. Diogu's theory, without anything more, to recuse herself. That illogical outcome is directly at odds with the Court's crucial responsibility to protect the integrity of the judicial process.

With respect to an alleged personal bias or prejudice, Mr. Diogu has failed to show that the undersigned has taken any actions in this matter that arise out of an "extrajudicial source." The undersigned's background or associations have had no impact on this Court's approach to this lawsuit in general or the specific issues in the November 28 show cause order. Rather, all the undersigned's actions have stemmed from her role as a judicial officer in this litigation. As explained above, this Court's attempts to verify the veracity of Mr. Diogu's representations were appropriate and not "extrajudicial[]" as Mr. Diogu alleges. Further, Mr. Diogu did not file the required affidavit under 28 U.S.C. § 144 setting forth allegations of bias and prejudice, which alone is enough to deny a motion for recusal.

Nor do Mr. Diogu's filings present any facts from which a reasonable person could conclude that the undersigned has any personal bias or prejudice against Mr. Diogu. Instead, Mr. Diogu's statements are his opinions of the proceedings in this case and of the prior proceedings that are matters of public record in his bankruptcy case. Without any factual basis, Mr. Diogu has implicitly, if not explicitly, accused the undersigned of racial animus toward him. If Mr. Diogu can make a substantive argument of the Court's alleged personal bias or prejudice that is supportable by evidence, he is required to have submitted an affidavit under 28 U.S.C. § 144 rather than simply making accusations that essentially amount to slurs.

If a judge's recusal is not required, it is also not permitted. "Although a judge is obliged to disqualify [herself] when there is a close call concerning [her] impartiality, [she] has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (citing *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (separate memorandum of Rehnquist, J.) (collecting cases)). Here, Mr. Diogu has offered no evidence to support that the

undersigned's impartiality might be reasonably questioned or from which a reasonable person could conclude that she holds any personal bias or prejudice against Mr. Diogu.

### III. CONCLUSION

Based on the foregoing, Mr. Diogu's request that the undersigned recuse herself in this matter, raised in the motions titled "Attorney Diogu Kalu Diogu's Emergency Motion for Continuance of the March 22nd, 2023 Hearing, Recusal, and Sealing of Document Number 33" (Docket Nos. 47, 48) and also in his March 23 letter to the Court (Docket No. 51), are DENIED.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

15

Case 3:22-cv-00603   Document 55   Filed 03/30/23   Page 15 of 15 PageID #: 1272